IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Fan JIANG, | Case No. CV-F-06-0369-LJO-NEW |
| Plaintiff, | |
| vs. | **ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| David N. STILL, District Director, US Citizenship & Immigration Services, | **ORDER DENYING PLAINTIFF"S MOTION FOR SUMMARY JUDGMENT** |
| Defendant. | |

**Introduction**

Plaintiff Jiang Fan ("Jiang") brings this action against Defendant David N, Still in his official capacity as District Director of the United States Citizenship & Immigration Services ("USCIS"). On February 16, 2006, USCIS denied Jiang's application for adjustment of status to legal permanent resident, because Jiang was no longer under 21 years of age at the time she applied and was therefore no longer eligible for adjustment of status under the appropriate provisions of the Immigration and Nationality Act ("INA"). Jiang seeks a determination by this Court that she is statutorily eligible for admission as a lawful permanent resident, with an order that USCIS reopen the adjustment proceedings. For the following reasons, Defendant's Motion for Summary Judgment is granted and Jiang's Motion for Summary Judgment is denied.

**Background**

The facts in this case are not in dispute. Jiang entered the United States on July 13, 2005 on a non-immigrant visa issued by the United States Department of State, pursuant to Section 101(a)(15)(k)(iii) of the INA, 8 U.S.C.§ 1101(a)(15)(K)(iii) ("K visa")[1], as the minor child accompanying an alien described in clause (i)–her mother was the fiancee of a United States Citizen. Jiang's mother was admitted as a non-immigrant K-1 visa holder, while Jiang was admitted as a non-immigrant K-2 visa holder. Jiang's 21st birthday was July 14, 2005, one day after her admission to the United States.

Jiang's mother, Liang Fengli ("Liang"), complied with the requirements of her K-1 visa by marrying her United States citizen fiancé, David Washington, within 90 days of her entry into the United States. Washington and Liang were married on August 24, 2005.

On October 6, 2005, both Jiang and her mother filed for adjustment of status from their K visas to that of lawful permanent resident ("LPR"). The application for Jiang's mother was approved on February 8, 2006, and her status was adjusted to LPR. On February 16, 2006, however, Jiang's application was denied.

USCIS found that Jiang was statutorily ineligible to adjust status to LPR pursuant to her admission as a K-2 non-immigrant, because she had turned 21 prior to her mother's marriage to a U.S. citizen. It was further found that Jiang did not qualify as a child or stepchild under 8 U.S.C. §1101(b)(1). Accordingly, she was not the "minor" child of the K-1 visa holder through whom she was attempting to adjust status. This action followed.

**Jurisdiction**

Jiang seeks a declaration of eligibility to adjust status under the provisions of 8 USC §1255. This Court's jurisdiction is therefore governed by 28 USC §1331 and § 2201.

---

[1] The Immigration & Nationality Act ("INA") has been codified in Title 8 of the United States Code. In some instances, only the section of the INA will be cited. The parallel citations are given in full here, as well as the short-hand references used in this opinion. "Section 214(d)" is found at Section 214(d) of the INA and 8 U.S.C. §1184(d). "Section 216(a)" is Section 216(a) of the INA and 8 U.S.C. §1186(a). "Section 245" is Section 245 of the INA and 8 U.S.C. §1255.

**Discussion**

**A. Standards of Review and Issue Presented**

This case presents questions of law regarding the INA, which this Court reviews *de novo*. *Ladha v. INS*, 215 F.3d 889, 896 (9th Cir. 2000). Because this case involves an agency's construction of a statute it administers, this Court is further confronted with two questions. If the Congressional intent of the statute is clear, both the agency and the Court must give effect to the express statement of intent. *Murillo-Espinoza v. INS*, 261 F.2d 771, 773 (9th Cir. 2001)(citing *Chevron U.S.A., Inc. v. Natural Res. Defense Counsil, Inc.*, 467 U.S. 837, 842-43 (1984)). If, however, the statute is silent as to the specific issue, the question for the reviewing court is whether the agency's answer is based on a permissible construction of the statute. See *Chevron*, 467 U.S. at 843. If so, then reviewing court is to defer to the agency's interpretation. *Id.; Ladha,* 215 F.3d. 889, 896.[2]

Considering the deference this Court gives to the agency's interpretation of its statutes, the issue presented to this Court is whether USCIS permissibly interpreted the INA as requiring Jiang to establish that she was eligible for adjustment of status under Section 245 and whether USCIS properly determined Jiang eligible for adjustment of status, because she did not qualify under Section 245 of the INA.

**B. Background of K Visa**

In 1970, Congress created a non-immigrant visa for fiances of United States citizens (K-1 visas), which allowed such aliens to enter the United States for the purpose of marrying the United States citizen. Public Law 91-255 (April 17, 1970). This legislation also created Section 214(d) to the Immigration and Naturalization Act, which covers the requirements of the issuance of a K visa. At the same time, Congress also provided a non-immigrant visa for the child of an alien holding a K-1 visa, if such a child is following to join or accompanying the alien. 8 USC §1101(a)(15)(K)(iii).

Prior to 1986, Section 214(d) of the INA, 8 USC §1184(d), contained a provision for the adjustment of status of K-1 and K-2 visa holders after the marriage of the K-1 visa holder to the United States citizen. The statute read, in pertinent part: "In the event the marriage between the said alien and the petitioner <u>shall occur</u> within three months after entry and they are found otherwise admissible, the

---

[2] This Court is not always bound by *Chevron* deference, however. See *Garcia-Quintero v. Gonzales*, 455 F.3d 1006 (9th Cir. 2006).

3

Attorney General <u>shall record</u> the lawful admission for permanent residence of the alien and minor children..." See *Matter of Dawson*, 16 I & N Dec. 693, n.2 (BIA 1977) (emphasis added).

In 1986, Congress passed the Immigration Marriage Fraud Amendments of 1986. Public Law 99-639. The purpose of the legislation was to curb immigration marriage fraud. See H.R. Rep. 99-906, 1986 USCCAN 5978. The 1986 legislation added a requirement that the couple must have met in person within the previous two year period and also changed the adjustment language. Rather than the positive language of adjustment of status after marriage, Section 214(d) now reads, in pertinent part: "In the event the marriage with the petitioner <u>does not occur</u> within three months after the admission of the said alien and minor children, <u>they shall be required to depart</u> from the United States and upon failure to do so shall be removed in accordance with sections 240 and 241." (emphasis added). The language directing adjustment of status after the marriage occurs was removed.

**C**. **Adjustment of status under Section 245**

Chapter 5 of the INA governs the adjustment of status of non-immigrants to that of a person admitted for permanent residence. Because Jiang was admitted to the United States pursuant to a non-immigrant K-2 visa and seeks to adjust status to LPR, it is clear that it is directly applicable in the case at bar. Section 245(a), 8 USC § 1255(a) reads:

> The status of an alien who was inspected and admitted or paroled into the United States...may be be adjusted...to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application of such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3)) an immigrant visa is immediately available to him at the time his application is filed.

Section 245(d) reads:

> **Alien Admitted for Permanent Residence on Conditional Basis; Fiancee or Fiancé of Citizen**...The Attorney General may not adjust, under subsection (a), the status of a nonimmigrant alien [with a K visa] except to that of an alien lawfully admitted to the United States on a conditional basis under section 216 as a result of the marriage of the nonimmigrant (or, in the case of a minor child, the parent) to the citizen....

Interestingly, both parties agree that Jiang does not qualify for adjustment under Section 245 of

4

the INA.[3]  First, she is not exempt from numerical limitations on visa availability pursuant to Section 201(b) of the INA, 8 USC §1151(b), because she is not an immediate relative of a United States citizen. An immediate relative in this context is defined as a child, spouse or parent of a U.S. citizen. 8 USC §1151(b)(2)(a)(I).  In the case of a step-parent/step-child relationship, the INA only recognizes relationships for such an exception if they were formed prior to the putative child's 18th birthday. 8 USC §1101(b)(1)(B).  Thus, Jiang is neither the child nor the step-child of Washington under the INA definitions and therefore does not qualify as an immediate relative under these provisions.  Because of this, Jiang is not exempt from the numerical requirements under subsection (a).  Further, Jiang there is not an immigrant visa immediately available to her as an unmarried daughter of an LPR.  Finally, Jiang is not a minor child and therefore does not qualify for adjustment of status pursuant to Section 245(d). Therefore, USCIS permissibly interpreted that a visa was not immediately available to Jiang and she did not otherwise qualify for an adjustment of status to LPR.

**D.  Adjustment of Status under Sections 214(d) and 216**

Thus, the question for this Court to decide is whether USCIS permissibly denied Jiang's status based on her ineligibility under Section 245 or whether USCIS should have also considered Sections 214(d) and 216(a).  An alien applying for adjustment of status bears the burden of proof that she meets the statutory requirements for eligibility. *Rashtabadi v. INS*, 23 F.3d 1562, 1567-68 (9th Cir. 1994). Jiang argues that while she may not adjust her status to that of LPR under Section 245, she may do so under Sections 214(d) and 216 of the INA.  Jiang reads Section 214(d) as imposing only one condition on a K visa holder–marriage within 90 days to a United States citizen.  Because she was properly admitted as a K-2 "child" and her mother married within the prescribed 90 -day period, Jiang argues, then she should be qualified for admission to permanent resident status.  Further, Jiang contends that Section 216 allows for adjustment to LPR for "sons and daughters" who are no longer minors.  For the following reasons,  the Court finds that Jiang has not met her burden of proof that she meets the statutory requirements for eligibility.

---

[3]In Jiang's Memorandum of Points and Authorities in Support of Motion for Summary Judgment, Jiang discusses various reasons why she does not qualify under Section 245, in a section entitled, "Plaintiff Does Not Qualify Under §245." pp. 15-16. In Jiang's Opposition to Defendant's Motion for Summary Judgment, Jiang reiterates this position in a section entitled, "Section 245 Adjustment is not in issue." pp. 3-4.  Thus, Section 245 eligibility is not in dispute here.

**1. Section 214(d)**

Adjustment of status to LPR for K visa holders is not automatic. As discussed *supra*, Congress amended Section 214(d) in 1986. In doing so, Congress explicitly removed from the statute the express grant of authority for a streamlined adjustment of status of K visa holders.[4] Section 3(c) of the Immigration Marriage Fraud Amendments of 1986 provides: "Requiring Filing of Adjustment of Status Petition–Section 214(d) of such Act is amended by striking the last sentence." P.L. 99-639, 100 Stat. 3537 (1986)("IMFA"). In its place, the new legislation added the provision requiring K visa holders to leave the United States in the event the marriage does not take place. See *supra*.

The procedure for adjustment of status from a K visa to LPR did not, however, disappear. Removed from the statute, the procedure now exists as a regulation. 8 CFR §214.2(k)(6)(ii) reads:

> Upon contracting a valid marriage to the petitioner within 90 days of his or her admission as a nonimmigrant pursuant to a valid K-1 visa issued on or after November 10, 1986, **the K-1 beneficiary and his or her minor children may apply for adjustment of status to lawful permanent resident under section 245 of the Act.** Upon approval of the application the director shall record their lawful admission for permanent residence in accordance with that section and subject to the conditions prescribed in section 216 of the Act (emphasis added).

"The power of an administrative agency to administer a Congressionally created...program necessarily requires the formulation of a policy and the making of rules to fill any gap left, implicitly or explicitly by Congress." *INS v. Cardoza-Fonseca*, 480 U.S. 421, 445 (1987) (citing *Morton v. Ruiz*, 415 U.S.199, 231 (1974)). After the IMFA, Congress left an explicit gap in Section 214(d) for the procedure through which a K visa holder should file for adjustment of status to that of LPR. Thus, the controlling regulation, 8 C.F.R. §214.2(k)(6)(ii), was created to fill that gap. "If Congress has explicitly left a gap for the agency to fill, there is an express delegation of authority to elucidate a specific provision of the statute by regulation. Such legislative regulations are given controlling weight unless they are arbitrary, capricious, or manifestly contrary to the statute." *Id.*

---

[4] Even under the more permissive, pre-1986 language of Section 214(d), K visa holders were still required to prove admissibility under Section 245 before the status could be properly adjusted. " From the language of the statute itself, it is ...obvious that an applicant not only present competent evidence that a bona fide marriage was celebrated within 90 days of arrival, but also that he/she is otherwise admissible before the application warrants approval. Only when these two statutory requirements are satisfied does recordation become mandatory." *Matter of Dawson*, 16 I & N. Dec. 693, 695-96.

8 C.F.R/ §214.2(k)(6)(ii) is neither arbitrary, nor capricious to limit the adjustment of status for a minor child who gained K visa status as a derivative. Rather, this regulation is consistent with all of the relevant provisions of the INA concerning K visa holders. To become a K-2 visa holder, as Jiang did, she must have been a "child" within the meaning of the Act. *See* Section 101(a)(15)(k)(iii) of the INA, 8 U.S.C.§ 1101(a)(15)(K)(iii). Section 214(d), issuance of a non-immigrant visa to a fiancee or fiancé of a U.S. citizen, also speaks only of a minor child with said alien fiancee. Notably, this section refers to the K-2 visa hold as a child *after* the three month period allowable for the marriage has elapsed. The only reference at all to a K-2 visa holder in this provision is in the following sentence: "In the event the marriage does not occur...said alien and minor children...shall be required to depart." From this plain language of the statute,  Section 214(d) contemplates that such a beneficiary of a K visa would remain a child at least until the marriage occurs. Such an interpretation is consistent with the K visa statute and is a permissible interpretation by USCIS.   Further along the process, Section 245(d), the limitation of adjustment to that of conditional under Section 216, refers only to minor child whose parent marries a U.S. citizen. Thus, this regulation is consistent with the statute and permissibly fills in the gap explicitly left by Congress.

In applying 8 C.F.R. 214.2.(k)(6)(ii), USCIS permissibly rejected Jiang's application.  First, the regulation only refers to a K-1 beneficiary and his or her "minor" children." In this case, Jiang was not a minor child at the time of application. It is both reasonable and permissible for USCIS to interpret this statute as requiring Jiang to be a "child" at the time she applied to be eligible for adjustment of status to LPR.  Second, this regulation outlines only one way in which a K-1 beneficiary or their minor child can apply for adjustment of status to LPR–through Section 245 of the INA.  Because this is the only explicit way in which said alien may properly adjust status under the regulation which defines the process of adjustment of status for K visa holders, it is both permissible and reasonable for USCIS to limit the consideration of Jiang's status to Section 245 only. Third, the regulation refers to Section 216 as a section under which conditions are prescribed.[5] This characterization of Section 216 gives that provision its intended and express meaning.

---

[5]This point supplements that Court's opinion that Section 216 does not have a procedural component of adjusting status, discussed more fully *infra*.

The same result occurs with a reading of 8 C.F.R. §245.2(c).[6] Jiang argues that this regulation provides an alternative adjustment procedure for a K-2 visa holder under Section 214(d). This regulation, however, is clearly applicable only to those who are eligible under Section 214(d). Section 214(d) covers minor children of alien fiancees. Jiang is no longer a minor child. Further, this regulation governs Section 245, under which Jiang admits she does not qualify. Having admitted she does not qualify under Section 245, Jiang accordingly does not qualify under its regulations. Therefore, Jiang has failed to prove that she may adjust status under Section 214(d).

**2. Section 216 of the Act**

Jiang also argues that she may adjust status under Section 216. First, Jiang argues that the adjustment language of Section 214(d) was moved to Section 216 in 1986. Second, Jiang relies on the definitions contained in Section 216(g), which do not impose an age limit on an alien daughter. Jiang's argument, however, simply can not be supported by a reading of the statute and its history.

Section 2(a) of the IMFA added Section 216 of the INA imposes conditions on the nature of the legal permanent resident status for certain alien spouses, sons and daughters. Section 216 outlines that certain alien sons and daughters, "at the time of obtaining the status of an alien lawfully admitted for permanent residence" shall have a conditional LPR status, subject to other provisions. To wit, legal permanent residence for alien spouses, sons and daughters is now conditional for a time period of 2-3 years, during which time further petition filings and personal interviews would need to be satisfied.

There is no clear adjustment language in the section; rather, it imposes conditions on the LPR status of an alien spouse or daughter.[7] Within the INA, there are several places in which Congress has specifically granted authority to the Secretary of Homeland Security through USCIS or the Attorney

---

[6] 8 CFR § 245.2 (c) reads: Application under section 214(d) of the Act. An application for permanent resident status pursuant to section 214(d) of the Act shall be filed on Form I-485 with the director having jurisdiction over the applicant's place of residence. A separate application shall be filed by each applicant. If the application is approved, the director shall record the lawful admission of the applicant as of the date of approval. The applicant shall be notified of the decision and, if the application is denied, of the reasons therefor. No appeal shall lie from the denial of an application by the director but such denial shall be without prejudice to the alien's right to renew his or her application in proceedings under 8 CFR part 240.

[7] It should be noted further thatSection 216 is not applicable to Jiang in the instant case, in that it only applies to sons and daughters who have already been granted lawful permanent residence, conditional or otherwise.

1 General to grant lawful permanent resident status to a particular group of aliens. In each of those
2 instances, the plain language of the statute makes clear the express authority to either grant or have
3 granted LPR status.[8] No such language is found in Section 216. Rather, the plain language of 216
4 imposes conditions of the LPR status already granted. Furthermore, it is clear with the enactment of
5 the IMFA that Congress intended Section 216 to impose a conditional limitation to the LPR status of
6 alien spouses and children, in order to curb immigration marriage fraud. See H.R. Rep. 99-906, 1986
7 USCCAN 5978. Thus, Section 216 must be given the effect of the express statement of intent. *Chevron*
8 *U.S.A., Inc. v. Natural Res. Defense Counsil, Inc.*, 467 U.S. 837, 842-43 (1984). To that end, Jiang can
9 not rely upon Section 216 for her contention that she may adjust her K-2 visa status to LPR.

11 //////////////
12 ////////////////////
13 //////////////////////
14 //////////////////////
15 ////////////////////////////
16 //////////////////////////////////
17 ///////////////////////////////////////
18 ///////////////////////////////////////////////

## CONCLUSION

21 Lawfully admitted as a K-2 visa holder into the United States, Jiang was not eligible for
22 adjustment to LPR status at the time of her application. A K-2 visa holder must satisfy the requirements
23 of Section 245 in order to adjust status to LPR. In this instant case, Jiang has failed to prove she has met

---

[8] For example, 8 USC §1159(a)(2)("Any refugee found eligible shall...be regarded as lawfully admitted to the United States for permanent residence..."); 8 USC §1159(b) ("The Secretary of Homeland Security or the Attorney General...may adjust to the status of an alien lawfully admitted for permanent residence of any alien granted asylum."); 8 U.S.C. §1160(a)(2) ("The Attorney General shall adjust the status of any alien to that of an alien lawfully admitted for permanent residence:); 8 USC §1255(a) ("The status of an alien...may be adjusted by the Attorney General...to that of lawfully permanent resident"); 8 USC §1259 ("A record of lawful admission for permanent residence may...be made.")

the statutory requirements. Therefore, Jiang's application for adjustment of status was properly denied.

For the foregoing reasons, Defendant's Motion for Summary Judgment is GRANTED and Jiang's Motion for Summary Judgment is DENIED.

This Court VACATES the 3/26/2007 hearing and DIRECTS the Clerk of Court to enter Judgment in favor of Defendant and against Plaintiff to close this action.

IT IS SO ORDERED.

**Dated:   March 2, 2007**                              **/s/ Lawrence J. O'Neill**
b9ed48                                                                UNITED STATES DISTRICT JUDGE